**UNITED STATES of America**

v.

**Heriberto SANTIAGO, Appellant.**

**No. 09–2716.**

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit
LAR 34.1(a) on May 10, 2010.

Opinion filed July 19, 2010.

Francis C. Barbieri, Jr., Esq., Paul G. Shapiro, Esq., Robert A. Zauzmer, Esq., Office of United States Attorney, Philadelphia, PA, Jay W. Jenkins, Esq., Office of District Attorney, Allentown, PA, for United States of America.

Benjamin B. Cooper, Esq., Office of Federal Public Defender, Allentown, PA, Robert Epstein, Esq., Brett G. Sweitzer, Esq., Defender Association of Philadelphia, Philadelphia, PA, for Appellant.

Before: BARRY and ROTH, Circuit Judges and HILLMAN [*], District Judge.

## OPINION

ROTH, Circuit Judge:

Appellant Heriberto Santiago pled guilty to a four-count indictment charging him with (1) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and (3–4) being a felon in possession of a firearm and of ammunition, both in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the District Court committed three errors. First, he contends that the court erred in denying his motion to suppress evidence obtained pursuant to an allegedly defective warrant. Second, he urges that the court improperly classified his prior Pennsylvania conviction for reckless endangerment as a "crime of violence" under the Sentencing Guidelines. And third, he argues that the court erred by entering separate convictions for the possession both of a firearm and of ammunition. We will affirm the District Court's order denying Santiago's motion to suppress and its judgment entering separate convictions for possession of the firearm and ammunition, but we will vacate his sentence and remand the case for re-sentencing.

## I. *Background*

On November 1, 2007, the Allentown police obtained a warrant to search Santiago's home and vehicle for a cellular telephone, based on two affidavits of probable cause submitted by police detectives. In those affidavits, the detectives indicated that a witness to an Allentown homicide had been been in contact with that telephone multiple times on the day of the crime, including a call just nine minutes prior to the homicide. The witness admitted that he had been at the scene of the crime in order to buy illegal drugs, but he lied about who owned the cellular telephone in question. The detectives determined that the cellular telephone belonged to Santiago, and they obtained cell site location records that revealed that the cellular telephone had been in the approxi-

[*] Honorable Noel L. Hillman, United States District Judge for the District of New Jersey, sitting by designation.

mate area of the homicide around the time of the crime.

The police executed the warrant on November 2. They detained Santiago outside his home while he was getting into his car and found a .40 caliber semiautomatic handgun on his person. The police then searched his house and, based on their plain view observations of drug trafficking evidence, obtained a warrant to search the residence for drugs and ammunition. That search revealed a full box of 39mm ammunition.

Santiago was charged in a four-count indictment, as described above. He moved to suppress the evidence seized during the execution of the warrant, alleging that the initial warrant failed to establish probable cause. The District Court denied that motion, and Santiago subsequently pled guilty to all charges, conditioned on his being able to appeal the suppression denial after his conviction. At sentencing, the District Court calculated Santiago's base offense level for possession of the firearm and ammunition to be 20 under § 2K2.1(a)(4)(A) of the Sentencing Guidelines, determining that Santiago's prior conviction for reckless endangerment of another person qualified as a "crime of violence." The court sentenced Santiago to a total of 120 months imprisonment, and Santiago appealed.[1]

## II. *Discussion*

### A. Motion to Suppress

Santiago first argues that the District Court erred in denying his motion to suppress the evidence obtained pursuant to the initial search warrant for the cellular telephone. He contends that "the search warrant was devoid of probable cause to believe that the cellular telephone sought was or contained evidence relating to the homicide being investigated."

The District Court denied the suppression motion based on the facts set forth in the affidavit. In reviewing this denial, we "sit[ ] like a district court and must, like the district court, give great deference to the magistrate judge's probable cause determination." *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir.2001). Our role "is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'" *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir.2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

 We agree with the District Court that the affidavits "contain ample indicia of probable cause that Defendant's cellular telephone was evidence of a crime." The affidavits contained information indicating that Santiago owned the cellular telephone in question, that he had been in contact with a witness immediately before the homicide, and that he had been in the vicinity of the homicide. We, therefore, hold that the District Court had a substantial basis to conclude that there was probable cause that Santiago's cellular telephone would contain evidence pertaining to the homicide.

### B. "Crime of Violence"

We exercise plenary review over the District Court's determination that Santiago's prior Pennsylvania conviction for reckless endangerment of another person was a "crime of violence." *United States v. Johnson*, 587 F.3d 203, 207 (3d Cir. 2009). Under the Sentencing Guidelines, a

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction un-der 28 U.S.C. § 1291.

firearm offense in violation of 18 U.S.C. § 922(g)(1) carries a base offense level of 20 if the offender had previously committed a "crime of violence" or a "controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A). A "crime of violence" is defined as

> "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

*Id.* § 4B1.2(a).

■ The question presented in this appeal is whether the Pennsylvania reckless endangerment offense is of the type that would justify its inclusion within § 4B1.2(a)(2), known as the "residual provision." *See Johnson*, 587 F.3d at 208. Santiago had previously been convicted and sentenced to 23 months' imprisonment for reckless endangerment under 18 Pa. Cons.Stat. § 2705. That statute provides that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

The District Court determined that reckless endangerment fell within the residual provision, based on our decision in *United States v. Parson*, 955 F.2d 858 (3d Cir.1992), in which we held that a Delaware conviction for reckless endangerment

was a crime of violence. Santiago argues that, following *Begay v. United States*, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), *Parson's* holding must be reevaluated. He urges that reckless endangerment should no longer be considered a crime of violence because it lacks the requisite "purposeful" *mens rea* to fall within the residual provision.[2]

In *Begay,* the Supreme Court interpreted a virtually identical residual provision in the definition of "violent felony" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). The Court found that the list of examples in the residual provision—burglary, arson, extortion, use of explosives—indicated that "the statute covers only *similar* crimes, rather than *every* crime that 'presents a serious risk of physical injury to another.'" 553 U.S. at 142, 128 S.Ct. 1581 (citing 18 U.S.C. § 924(e)(2)(B)(ii)). And the Court concluded that crimes are similar to the enumerated examples if they involve "purposeful, violent, and aggressive conduct." *Id.* at 144–45, 128 S.Ct. 1581 (internal quotation marks omitted).

We have applied *Begay's* analysis to the definition of "crime of violence" and held that a prior conviction falls within § 4B1.2(a)'s residual provision "if it 'typically involve[s] purposeful, violent, and aggressive conduct.'" *United States v. Stinson*, 592 F.3d 460, 465 (3d Cir.2010) (citing *Begay*, 553 U.S. at 144–45, 128 S.Ct. 1581); *Johnson*, 587 F.3d at 208.

To determine whether a crime involves "purposeful, violent, and aggressive conduct," we apply "a categorical approach to classify a prior conviction," asking "wheth-

---

**2.** In the District Court, the government argued that *Parson* was controlling. On appeal, however, the government concedes that, post-*Begay*, reckless endangerment is not a crime of violence. Even though the government concedes this point, "a government concession of law is not binding on this court." *United States v. Marino*, 682 F.2d 449, 455 (3d Cir.1982) (internal quotation marks omitted).

er the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *Johnson,* 587 F.3d at 208 (internal quotation marks omitted).

*Johnson* involved an intentional crime, but in *dictum* we questioned "whether reckless conduct may amount to a crime of violence post-*Begay.*" *Id.* at 210 n. 8. We further noted that "nearly every court of appeals that has considered the issue has held that reckless conduct does not qualify as a crime of violence post-*Begay.*" *Id.* (citing *United States v. Baker,* 559 F.3d 443, 453 (6th Cir.2009); *United States v. Roseboro,* 551 F.3d 226, 242–43 (4th Cir. 2009); *United States v. Smith,* 544 F.3d 781, 786–87 (7th Cir.2008); *United States v. Gray,* 535 F.3d 128, 131–32 (2d Cir. 2008)).

After this appeal was filed, our Court issued its decision in *United States v. Lee,* 612 F.3d 170, 195–97 (3d Cir.2010), in which we joined our sister circuits in holding that "following *Begay,* a conviction for mere recklessness cannot constitute a crime of violence." [3] Accordingly, the District Court erred in determining that Santiago's prior reckless endangerment conviction was a crime of violence under U.S.S.G. § 2K2.1(a)(4)(A).

■ This conclusion, however, does not end our analysis of this Sentencing Guidelines provision. The government argues that § 2K2.1(a)(4)(A) was nonetheless applicable because the presentence investigation report (PSR) also noted that Santiago had a prior controlled substance offense that would alternatively justify this sen-

tencing enhancement. Even though this prior offense would qualify as a "controlled substance offense," we find the government's argument unavailing.

In order to increase Santiago's sentence based on a prior crime of violence or controlled substance offense, the sentencing court can "use only those felony convictions that receive criminal history points under § 4A1.1(a), (b), or (c)." U.S.S.G. § 2K2.1(a)(4)(A) cmt. n. 10. Under § 4A1.1(a)–(c), a prior offense can receive a maximum of 3 criminal history points if it resulted in a "sentence of imprisonment exceeding one year and one month." *Id.* § 4A1.1(a). Here, the PSR did not assign any criminal history points to Santiago's controlled substance offense because he was simultaneously sentenced for both this crime and a prior escape offense. The Sentencing Guidelines direct that when an offender is sentenced on the same day for two crimes committed without an intervening arrest, the two sentences are to be considered a single sentence for criminal history purposes. *Id.* § 4A1.2(a)(2). Santiago's escape and controlled substance offense sentences were, accordingly, combined as a single sentence. The PSR assigned 3 points to the escape crime, which is the same number of points that the escape offense would have received on its own. Because the addition of the controlled substance offense did not increase the criminal history points for the escape offense, the controlled substance offense did not receive any criminal history points under § 4A1.1(a), (b), or (c). *See id.* § 4A1.1(f), cmt. n. 6. Therefore, this prior conviction cannot serve as an alternative justification

---

**3.** Even though *Lee's* holding parted with our precedent in *Parson,* "a panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc

decision when the prior decision conflicts with a Supreme Court decision." *Johnson,* 587 F.3d at 207 n. 4 (internal quotation marks omitted).

for the District Court's application of § 2K2.1(a)(4)(A).[4]

Because Santiago's prior reckless endangerment offense was not a "crime of violence" and his controlled substance offense received no criminal history points, the District Court erred in applying § 2K2.1(a)(4)(A) to increase his sentence.

## C. Felon in Possession of Handgun and Ammunition

█ Santiago's third and final argument is that the District Court erroneously entered separate counts of conviction for possession both of a handgun and of ammunition under 18 U.S.C. § 922(g)(1). Because this issue was not preserved in the District Court, we will reverse only if the District Court committed a plain error that affected Santiago's substantial rights. Fed. R.Crim.P. 52(b); *United States v. Tann*, 577 F.3d 533, 535 (3d Cir.2009). In *Tann*, we held that "possession of both a firearm and ammunition, seized at the same time in the same location, supports only one conviction and sentence under § 922(g)(1)." 577 F.3d at 537. Santiago asserts that *Tann* dictates that his simultaneous possession of both a firearm and ammunition should count as one conviction, even though the gun was found outside the home and the ammunition was discovered inside. Our holding in *Tann*, however, left open the possibility that multiple convictions for possession of a firearm and ammunition might be proper if they were seized in different locations or if they were acquired in separate transactions. *Id.* at 536–37. Therefore, *Tann* does not make it *per se* improper to impose separate convictions and sentences for the simultaneous possession of both a firearm and ammunition.

To meet his burden of establishing plain error, Santiago argues that, had the police executed the warrant moments earlier while he was still in his home, he could not have been charged with multiple offenses because the gun and the ammunition would have both been in the same location. We are not persuaded by this argument because multiple convictions would still have been appropriate if the gun and the ammunition had been purchased separately. But, because Santiago pled guilty to the separate counts and did not object to the separate convictions, the record is devoid of any evidence concerning how and when these items were acquired. Accordingly, we cannot find that the District Court committed plain error in entering separate convictions pursuant to § 922(g)(1) for gun and ammunition possession.

## III. *Conclusion*

For the reasons discussed above, we will affirm Santiago's conviction, but we will vacate his sentence and remand for resentencing.

---

4. On remand, if the District Court determines that the outcome of treating these two sentences as a single sentence underrepresents Santiago's criminal history, it may decide that an upward sentencing departure is warranted. U.S.S.G. § 4A1.2 cmt. n. 3